# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Matthew F. Kennelly | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 03 C 2524 | **DATE** | 8/9/2004 |
| **CASE TITLE** | Nippon vs. Mitsui | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to] ☐ FRCP4(m)  ☐ Local Rule 41.1  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] For the reasons set forth on the attached Memorandum Opinion and Order, the Court denies the motions of Nippon Express U.S.A. and Hanjin Shipping Co., Ltd. for partial summary judgment (34-1, 40-1). Motion for protective order and to strike certain points is terminated as moot (48-1,2). The Court previously granted Hanjin's motion to supplement its argument, so that motion is also terminated (39-1). Status hearing set to 8/16/04 at 9:30 a.m. for the purpose of setting a trial date and discussing the possibility of settlement. Trial counsel are directed to appear.
(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | | Document Number |
|---|---|---|---|---|
| | No notices required. | | number of notices | |
| | Notices mailed by judge's staff. | | AUG 10 2004 | |
| | Notified counsel by telephone. | | date docketed | |
| ✓ | Docketing to mail notices. | | | 51 |
| | Mail AO 450 form. | | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | | |
| OR | courtroom deputy's initials | Date/time received in central Clerk's Office | date mailed notice  mailing deputy initials | |

DOCKETED
AUG 10 2004

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| NIPPON EXPRESS U.S.A. (ILLINOIS), INC., <br><br> Plaintiff, <br><br> vs. <br><br> MITSUI SUMITOMO INSURANCE CO., LTD.; HANJIN SHIPPING CO., LTD.; NORFOLK SOUTHERN RAILWAY CO.; OMNI RAIL INTERNATIONAL, INC.; and JAM TRUCKING, INC., <br><br> Defendants. | Case No. 03 C 2524 <br><br> AUG 10 2004 |

## MEMORANDUM OPINION AND ORDER

MATTHEW F. KENNELLY, District Judge:

In September 2002, Sony Computer Entertainment, Inc. contracted with Nippon Express U.S.A. (Illinois), Inc., a non-vessel-owning common carrier, to transport a quantity of Sony PlayStation games from Tokyo, Japan to Bolingbrook, Illinois. The PlayStation games were contained in 8,424 cartons which in turn were placed into nine forty-foot long containers for shipping. Nippon contracted with defendant Hanjin Shipping Co., a vessel-owning common carrier, to transport the goods to a container yard in Chicago, Illinois. Hanjin transported the containers by seagoing vessel to Tacoma, Washington, and from there, they were carried by the Burlington Northern Santa Fe Railroad to Chicago, where they were placed in a yard owned by defendant Norfolk and Southern Railway Company. One of the containers was later discovered to be missing from the yard, the gate to which allegedly was controlled by defendant Omni Rail Intermodal, Inc. The container was later found, but the PlayStation games it had contained were

not recovered.

Sony had contracted with defendant Mitsui Sumitomo Insurance Co. to insure the goods during shipment. Mitsui paid Sony's claim and demanded that Nippon pay $478,348, said to be the value of the lost PlayStation games. Nippon then commenced this action, seeking a declaration of non-liability or in the alternative indemnity or contribution, naming as defendants the other entities involved in the shipment as well as Mitsui. Hanjin and Nippon have both moved for partial summary judgment, arguing that their liability is limited to $500 based on the terms of the bills of lading that each issued. Both motions require consideration of the terms and effect of the Carriage of Goods at Sea Act (COGSA), 46 U.S.C. App. § 1301 *et seq.* For the reasons stated below, the Court denies both motions.

## Discussion

Nippon's bill of lading stated that "[e]xcept as otherwise provided herein, ... this Bill of Lading shall have effect subject to the provisions of ... [COGSA], which is incorporated herein and made a part hereof ...." Nippon Summ. Judg. Mot., Ex. B, ¶ 3.1. It stated that Nippon would be liable for loss of or damage to the goods occurring between the time it received them and the time it delivered them at the place of delivery, namely Bolingbrook. *Id.,* ¶ 7.1. The bill of lading also stated, however, that "[c]ompensation shall not ... exceed US $500.00 per container, package or unit unless with the consent of [Nippon], [Sony] has declared a higher value for the goods ...," *id.,* ¶ 8.2(a), which Sony did not do. The bill of lading defined "container, package or unit" as follows: "[w]here a container, pallet or similar article of transport is used to consolidate goods, the number of packages or units enumerated in this Bill of Lading as packed in such article of transport shall be deemed the number of packages or units for the purpose of this package or unit.

2

Except as aforesaid such article of transport shall be considered the package or unit." *Id.,* ¶ 8.2(b).

The first page of Nippon's bill of lading contained spaces to fill in, among other things, the "No. of Pkgs. or Containers." The bill of lading was completed in such a way that the information did not line up directly within the space provided, but the following information is contained at least partly in that particular space:

```
9 CONTAINERS
---------------------
8424 CARTONS
************
(40' H/C x 9 CONTAINERS)
            'FREIGHT COLLECT AS ARRANGED'
      SAY : NINE ( 9 ) CONTAINERS ONLY.
```

*See id.,* p. 1.

Hanjin issued Nippon a waybill covering Hanjin's portion of the shipment. The waybill stated that it was subject to the terms of Hanjin's standard bill of lading, a copy of which could be obtained from Hanjin's office. *See* Hanjin Summ. Judg. Mot., Ex. B, "Conditions of Carriage," ¶ 1. The waybill went on to state that it was subject to the "Hague Rules" unless the country of shipment had enacted no such rules and there was "corresponding legislation" in the country of destination, in which case that legislation would apply. *Id.*

Hanjin's bill of lading provided that "the applicable Hague / Visby / COGSA legislation shall govern throughout the time when the Goods are in the actual or constructive custody of the Carrier." Hanjin Summ. Judg. Mot., Ex. C, ¶ 2. It stated that "[d]amage shall, in all events, be limited in accordance with the applicable Hague / Visby / COGSA legislation," and that "[u]nless the nature and value of the Goods have been declared in writing by the Merchant before shipment

3

and inserted in this bill of lading ..., [w]here U.S. COGSA applies, the Carrier shall in no event be or become liable for any loss of damage to ... the Goods in an amount exceeding U.S. dollars 500 per package ...." *Id.,* ¶ 16. The Hanjin bill of lading defined "package" as "the single largest unit of Goods (e.g., container, pallet, box, bale) delivered by Merchant to Carrier for carriage pursuant to the terms of this Bill of Lading." *Id.,* ¶ 1(g). The Hanjin waybill listed "8,424 CTNS" in the column identifying the "No. of Pkgs. or Containers," though on a different section of the waybill it stated "NINE (9) CONTAINERS ONLY" in a section listing the "Total No. of Packages or Containers (in works)." Hanjin Summ. Judg. Mot., Ex. B.

COGSA, like both bills of lading in this case, imposes a $500 per-package limitation on the liability of a carrier. *See id.* § 1304(5). But under COGSA, if, as in this case, a bill of lading discloses on its face the number of units or packages inside the container, and those units or packages reasonably may be considered COGSA packages, then the packages inside the container are considered to be the packages for purposes of the $500 per-package limitation. *See, e.g., Monica Textile Corp. v. S.S. Tana,* 952 F.2d 636, 639 (2d Cir. 1991); *Hayes-Leger Assocs., Inc. v. M/V Oriental Knight,* 765 F.2d 1076, 1080 (11th Cir. 1985); *Int'l Adjusters, Inc. v. Korean Wonis-Son,* 682 F. Supp. 383, 386 (N.D. Ill. 1988). This "clear rule" applies even if the carrier's bill of lading purports to define the package as the container itself, unless the bill of lading contains "explicit and unequivocal" terms making it clear the parties agreed to that definition. *Monica Textile,* 952 F.2d at 642. But that exception to the rule "is more apparent than real." *Id.* When a bill of lading refers to both containers and other units susceptible of being considered as packages, it is "inherently ambiguous," and the ambiguity found in what *Monica Textile* characterizes as "unbargained-for boilerplate" is resolved against the carrier (that

4

is, against considering the container as the COGSA package). *Id.* at 642, 643. In *Monica Textile,* the Second Circuit held that a definition of "package" that is effectively indistinguishable from the one found in Nippon's bill of lading was insufficient to make the container the package for purposes of COGSA. *Id.* at 642-43. In short, if COGSA applied by its own terms in this case, the relevant number of packages for purposes of the $500 per-package limitation in Nippon's bill of lading would be 8,424 packages, rather than one package as Nippon argues.

But COGSA does not apply by its own terms in this case. The statute governs the period between the loading of the goods onto the ocean vessel and the discharge of the goods from the vessel. 46 U.S.C. App. § 1301(e). In this case, the loss occurred after the goods were discharged from Hanjin's ship. The Court must determine whether this renders the *Monica Textile* analysis inapplicable.

When a bill of lading contains an express statement that it is subject to COGSA, it is subject to COGSA's terms "as if subject hereto by the express provisions" of COGSA. *Id.* § 1312. Mitsui argues that this means that the COGSA-supplied definition of "package," as discussed above, applies in this case. The Eleventh Circuit has so held. In *Groupe Chegaray / V. de Chalus v. P&O Containers,* 251 F.3d 1359, 1364 (11th Cir. 2001), the court held that when a bill of lading incorporates COGSA as "paramount throughout" the time the goods are in the shipper's custody (as is the case here), COGSA's definition of "package" applies. By contrast, Nippon and Hanjin argue that when COGSA is incorporated by reference into a contract, it is merely another contract term that is subject to modification or alteration by other contract terms. That, is appears, is the view of the Fourth and Second Circuits. *See Commonwealth Petrochemicals, Inc. v. S/S Puerto Rico,* 607 F.2d 322, 325-27 (4th Cir. 1979); *Pannell v. United*

*States Lines Co.*, 263 F.2d 497, 498 (2d Cir. 1959) (discussed in *Commonwealth Petrochemicals*).

The Court does not find *Commonwealth Petrochemicals* persuasive. COGSA says that where parties agree that they will be governed by COGSA's terms before loading or after discharge, their bill of lading is "subjected [to COGSA] as fully as if subject [t]hereto by the express provisions" of the statute. 46 U.S.C. App. § 1312. The plain meaning of this statutory provision is that COGSA applies the same way irrespective of whether it applies by its own terms or by private agreement. This construction of the statute "foster[s] predictability in this nettlesome area of the law." *See Monica Textile*, 952 F.2d at 643. In the Court's view, it would not make a great deal of sense to have COGSA apply one way when the goods are first turned over to the carrier before loading on the ship, a different way under the same bill of lading while the ship is at sea, and then back to the first way once the ship arrives at its destination and the goods are unloaded. The Court therefore agrees with the Eleventh Circuit that COGSA's definition of "package" applies to Nippon's bill of lading. Because the bill of lading specifically disclosed that the container contained a larger number of items that reasonably could be considered packages, the $500 per-package limitation stated on Nippon's bill of lading applies to that larger number of packages, not to the container as a whole.

The Court reaches the same conclusion regarding Hanjin's bill of lading. The attempt to define the package as the container was clearer in Hanjin's bill of lading than it was on Nippon's. But Hanjin did not actually issue a bill of lading in this case; rather it issued only a waybill that said it was subject to its standard bill of lading, which though available elsewhere was apparently not provided to Nippon and certainly not to Sony. The waybill provided, without limitation, that

6

it was subject to COGSA, and like Nippon's bill of lading it identified both the number of cartons (8,424) and the number of containers (9) under the heading "package." It therefore had the type of ambiguity that, under *Monica Textile,* calls for application of the general rule that the container is not the COGSA package when the shipping document discloses on its face a larger number of packages.[1] The fact that Hanjin had set forth a different definition in a separate document that was not even provided in connection with the shipment is insufficient to give rise to an exception to the general rule; "'[a]llowing the carrier ... to insert an essentially unbargained-for definition of 'package' in the bill of lading would effectively eliminate the protection COGSA was meant to afford shippers.'" *Monica Textile,* 952 F.2d at 643 (quoting *St. Paul Fire & Marine Ins. Co. v. SeaLand Serv., Inc.,* 735 F. Supp. 129, 132 (S.D.N.Y. 1990)). *See also Int'l Adjusters,* 682 F. Supp. at 386 ("international uniformity is best achieved by the approach ... that generally a container supplied by the carrier is not a COGSA package if its contents and the number of packages or units is disclosed'"; quoting *Mitsui & Co. v. American Expert Lines, Inc.,* 636 F.2d 807, 821 (2d Cir. 1981) (Friendly, J.)).

## Conclusion

For the reasons stated above, the Court denies the motions of Nippon Express U.S.A. (Illinois) Inc. and Hanjin Shipping Co., Ltd. for partial summary judgment [docket # 34-1, 40-1]. Hanjin's motion for protective order and to strike certain points from Nippon's memorandum [docket # 48-1 & 2] is terminated as moot. The Court previously granted Hanjin's motion to supplement its argument [docket # 39-1], so that motion is also terminated. The case is set for a status hearing on August 16, 2004 at 9:30 a.m. for the purpose of setting a trial date and

---

[1] As noted earlier, the waybill's terms made it clear that COGSA applied to the shipment.

discussing the possibility of settlement. Trial counsel are directed to appear.

　　　　　　　　　　　　　　　　　　　　　　_____
　　　　　　　　　　　　　　　　　　　　　　MATTHEW F. KENNELLY
　　　　　　　　　　　　　　　　　　　　　　United States District Judge

Date:   August 9, 2004